## NATIONAL LABOR RELATIONS BOARD v. ROCK HILL PRINTING & FINISH- ING CO.

## BROTHERHOOD OF TEXTILE PRINTERS AND ASSOCIATED WORKERS v. NA- TIONAL LABOR RELATIONS BOARD.

### Nos. 4904, 4944.

Circuit Court of Appeals, Fourth Circuit.

Nov. 5, 1942.

Charles F. McErlean, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, Louis Libbin and Robert E. Mullin, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for National Labor Relations Board.

Irving D. Lipkowitz, of New York City (Wilson & Wilson, of New York City, Joseph R. Moss, of York, S. C., and John T. Roddey, of Rock Hill, S. C., on the brief), for Brotherhood of Textile Printers and Associated Workers.

Warren Woods, of Atlanta, Ga. (Roberts & McInnis, of Washington, D. C., on the brief), for Machine Printers Beneficial Ass'n.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These cases are separate petitions of the National Labor Relations Board (hereinafter called the Board) and the Brotherhood of Textile Printers and Associated Workers (hereinafter called the Brotherhood), respectively, to review and enforce, and to set aside an order of the Board issued against the Rock Hill Printing and Finishing Company (hereinafter called Rock Hill Company). As is quite usual in such cases, the Board's findings are based upon evidence which, in large measure, was sharply controverted. However, in its lengthy decision which we have examined with great care, the Board painstakingly resolved these conflicts, making explicit findings as to the credibility of witnesses and the inferences to be drawn from their testimony. The Board, in all instances, followed the Trial Examiner's recommendations as to credibility. We feel that there

was substantial evidence in the record to support the outline, which we now set forth, of the important facts in the instant controversy.

Rock Hill Company is a Delaware corporation, with its plant and principal place of business at Rock Hill, South Carolina. It is engaged in the printing, dyeing, washing, mercerizing, and finishing of gray goods owned by its customers. Rock Hill's principal customer is its parent corporation, M. Lowenstein and Sons, Inc., of New York, which owns all or a majority of the capital stock of Rock Hill Company. Approximately 1,900 people are employed at the plant in Rock Hill, including 71 printers, 6 foreman printers, 69 back tenders and 54 gray tenders who work in the printing department. We are concerned in this proceeding solely with the printing department, which is the controlling division of the plant inasmuch as the cessation of its operations paralyzes the entire plant.

From 1933 until May, 1936, the printers employed by Rock Hill Company were members of the Machine Printers Beneficial Association (hereinafter called M. P. B. A.). During this period the M. P. B. A. had an "oral understanding" with Rock Hill Company, but on May 4, 1936, a strike was called as a result of the failure of negotiations respecting the length of working shifts. In an effort to keep the plant in operation, Rock Hill Company, through promises of higher wages and individual 5 year contracts, induced 4 members of M. P. B. A., Roberts, Tipping, Goley and Rawson, to refrain from joining the strike. With the aid of these men who acted as Boss Printers or supervisory employees in the print shop, Rock Hill Company began an intensive back-to-work movement. Moreover, during this crucial period, Rock Hill Company's Plant Manager Joslin, Divisional Superintendent Cross, and Chief Engineer Jenkins, all solicited resignations from the M. P. B. A. on printed petitions prepared by the attorney of Rock Hill Company. Those employees who refused to sign were threatened that they would be barred forever from future employment with Rock Hill Company. At the same time, Joslin and Cross suggested that the printers form a union of their own at Rock Hill and offered to match, dollar for dollar, all money put into the local union during the first two years. In any event, the strike was unsuccessful, although a picket line was maintained until November, 1936.

In the fall of 1936, Manager Joslin moved to New York, where he became an executive of M. Lowenstein and Sons. Shortly before leaving, he reviewed his previous suggestion for the organization of an independent union by advising Roberts to "get the boys together" to form a union of their own, "so that they would have nothing to do with" the M. P. B. A. On a subsequent visit to Rock Hill, Joslin asked Roberts how they "were getting along with" the union, to which Roberts replied "they were shaping it up". Joslin then told Roberts that one of the offices of Rock Hill Company, known as the conference room, could be used for meetings. Pursuant to the active instigation of Roberts and others, the Brotherhood was finally formally organized a year later, on August 2, 1937, for the purpose of providing collective bargaining for its members, to promote their general welfare, and to give them "protection against" any outside labor organization.

From this time on, a number of incidents occurred which openly demonstrated the hostility of Rock Hill Company toward the M. P. B. A. and its corresponding support and favoritism for the Brotherhood. Thus, Divisional Superintendent Pilgrim transferred Goley, who had secretly signed an M. P. B. A. application in October, 1938, from the night to the day shift, advising him that the move was made "to prove to the printers that you are not connected with the M. P. B. A. If you are connected with it and I see any sign of it, I am going to have you fired out of here if I have to fire you myself." Similarly, Plant Supervisor Grier told Goley to stay away from Tipping and Roberts, saying he had heard they belonged to the "outside union" and they might get Goley into trouble. It is unnecessary to mention other similar examples of like nature whereby Rock Hill Company rendered potent assistance to the Brotherhood.

On September 25, 1939, Lindberg, an M. P. B. A. official, had a conference with Joslin in New York, at which Lindberg announced that a majority of the printers then working for Rock Hill Company had signed M. P. B. A. cards. Lindberg thereupon demanded either recognition of the M. P. B. A. by Rock Hill Company, or a written refusal. Joslin asked Lindberg to keep secret the fact that they had conferred and Joslin stated that Rock Hill Company would recognize the M. P. B. A.

if proof of a majority representation were presented on October 3, 1939. Joslin then (September 27, 1939) left for Rock Hill and on the following day he discussed the M. P. B. A.'s membership in the plant with Jenkins and Pilgrim. That very evening Brotherhood leaders Sanders and McKenzie began circulating in the plant a "loyalty petition" in which 76 printers (99% of all those employed by Rock Hill Company) affirmed their allegiance to the Brotherhood and renounced all connections "with any other printers' union whatsoever".

Though fully aware of these activities, the high officials of Rock Hill Company made no efforts to interfere; on the contrary, they both acquiesced and assisted in the circulation of the petition on company time and on company property. This support must have been tantamount to a warning to the employees to sign, for several employees testified that they did so in the fear that they might otherwise lose their jobs; while other employees who had previously secretly joined the M. P. B. A. redesignated that organization after signing the petition. On September 30, the petition was presented to Joslin, who immediately promised formal recognition by Rock Hill Company of the Brotherhood as the exclusive representative of the printing department. At this time Joslin did not even make an effort to check the names on the petition despite the fact that he knew the M. P. B. A. was also claiming a majority of printers in its membership.

When Joslin returned to New York on October 3, he informed Lindberg that Rock Hill Company had given recognition to the Brotherhood and would not thereafter confer with M. P. B. A. Shortly thereafter the Brotherhood, with the tacit consent of Rock Hill Company, unleashed an open campaign of vilification against the M. P. B. A. Obscene signs and effigies directed against M. P. B. A. members, Roberts, Tipping and Goley in particular, were hung in the print room and left unmolested by the officials of Rock Hill Company. Brotherhood members left their machines to curse and abuse M. P. B. A. men, and Brotherhood printers were grossly insubordinate to Roberts, Tipping and Goley. Indeed, the decline of the M. P. B. A. from 40 members to 3 strikingly attests the success of Rock Hill Company's studied campaign, launched through its protege, the Brotherhood, to rid the plant of the M. P. B. A. By this time 5 M. P. B. A. members had been discharged, while most of the others sought to align themselves with the Brotherhood. Finally, Roberts, Tipping and Goley were discharged on December 8.

Upon the foregoing facts, the Board found that Rock Hill Company had dominated and interfered with the formation and administration of the Brotherhood and had contributed to its support in violation of Section 8(2) of the National Labor Relations Act; had discriminated in the hire and tenure of employment of 6 of its employees in violation of Section 8(3) of the Act; and that by reason of these acts and other conduct, Rock Hill Company had interfered with, restrained and coerced its employees in the exercise of the rights guaranteed them in Section 7 of the Act, thereby violating Section 8(1) of the Act. Accordingly, the Board ordered Rock Hill Company to cease and desist from its unfair labor practices; to withdraw recognition from and completely disestablish the Brotherhood; to reinstate with back pay the employees discriminatorily discharged; and to post appropriate notices.

Two questions are now presented for our consideration: (1) whether the Board's findings of fact that Rock Hill Company has violated Section 8(1), (2), and (3), of the Act are supported by substantial evidence, and (2) whether the Board's order is valid and proper under the Act.

The facts set out above seem to indicate with convincing force that the Brotherhood was the creature of Rock Hill Company and was brought into existence and utilized by Rock Hill Company as part of an elaborate plan to defeat the M. P. B. A. Rock Hill Company obviously not only sought the formation of an "inside" union, but it also took the initiative, through Joslin and Roberts, in the Brotherhood's organization. These promotional activities in themselves evidenced a manifest purpose to exploit the Brotherhood at the expense of M. P. B. A. and were sufficient to place the resulting employer-dominated organization beyond the pale of the statute. N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; N. L. R. B. v. Lane Cotton Mills Co., 5 Cir., 111 F.2d 814; N. L. R. B. v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867, certiorari denied 310 U.S. 651, 60 S.Ct. 1104, 84 L.Ed. 1416. Moreover, Sanders, the president of the Brotherhood, admitted that the Brotherhood had never attempted to secure a written contract with Rock Hill

Company and that whatever collective bargaining took place was confined to the adjustment of minor grievances.

■ We are not unmindful of the stipulated testimony of 34 printers to the effect that they joined the Brotherhood of their own free will in the absence of any coercion. This was considered by the Board but found, in the face of testimony to the contrary, not sufficient to alter its decision respecting the illegality of the conduct of Rock Hill Company. We find substantial evidence in the record to justify the Board's position. Cf. American Enka Corp. v. N. L. R. B., 4 Cir., 119 F.2d 60.

The following sequence of events, in its inexorable logic, appears to permit of no conclusion other than that reached by the Board—that Rock Hill Company interfered with the formation and administration of the Brotherhood, thereby constituting a constant obstacle to the free exercise by its employees of their right of self-organization and the right to bargain collectively through representatives of their own choosing:

(1) Rock Hill Company urges the formation of an inside union at the time of the 1936 strike;

(2) Rock Hill Company actively assists in the creation of such an organization, the Brotherhood;

(3) Rock Hill Company advises and then warns its employees to join the Brotherhood;

(4) Rock Hill Company grants hasty recognition to the Brotherhood and evidences hostility to the rival union, M. P. B. A.;

(5) Rock Hill Company threatens to discharge those suspected of M. P. B. A. activity or membership;

(6) Rock Hill Company carries out its threats with the ensuing discharges.

■ This course of conduct constitutes a clear case of an employer's illegal intrusion to impair the statutory rights of its employees guaranteed in the Act. Cf. Great Southern Trucking Co. v. N. L. R. B., 4 Cir., 127 F.2d 180, certiorari denied 63 S.Ct. 48, 87 L.Ed. ——. In so holding we do not wish to infer that an "inside" union in itself is a thing so vicious as to bring about its own condemnation under the Act. Such a body *can*, of course, be the product of self-organization and a proper vehicle for collective bargaining *if*

it is free from the influence or control of the employer. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 587, 61 S.Ct. 358, 85 L. Ed. 368. But this clearly was not true in the instant case.

With respect to the alleged discriminatory discharges of the 6 employees in violation of Section 8(1) and (3) of the Act, it would serve no useful purpose for us to prolong this opinion with a detailed discussion of the individual cases and the circumstances concerning each of the dismissals. The facts giving rise to the discharges are amply set forth in the Board's decision which is available to the public in the National Labor Relations Reports.

Suffice it to say that we have examined with care the able briefs of counsel as well as the relevant portions of the record, which consists of approximately 3,000 pages, and while we are fully cognizant of the principle that the right to hire and fire is still a managerial function, we are not moved by the reasons assigned by Rock Hill Company for the discharges. Officials of Rock Hill Company had continuously warned these men, by indirection or otherwise, to join the Brotherhood, and they were threatened with the loss of their jobs if they joined the M. P. B. A. As long as the men belonged to the Brotherhood or ignored the M. P. B. A., they were treated as able and deserving employees, even being granted promotions.· But once they became lukewarm in their Brotherhood adherence, or were suspected of M. P. B. A. affiliations, well-timed demotions followed and threats of discharge were received.

■ Indeed, Rock Hill Company admitted that 3 of the discharged employees, Roberts, Tipping and Goley, were "tops in that department" and "key men" who had rendered praiseworthy service from the time of the opening of the plant in 1929 until shortly before their dismissal. And despite the customary practice of Rock Hill Company to give from 1 to 4 weeks' notice to an employee to be discharged, these 3 men were summarily fired on the same day without warning, notice, or even the satisfaction of being apprised of the specific charges against them. Such an unexplained departure from a well-established procedure is certainly cogent evidence of discrimination. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; Burlington Dyeing & Finishing Co. v. N. L. R. B., 4 Cir., 104 F.2d 736; N. L. R.

B. v. Clarksburg Publishing Co., 4 Cir., 120 F.2d 976; N. L. R. B. v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, certiorari denied 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540. Accordingly, Rock Hill Company's attempted justification of the 6 discharges in the instant case does not stand up under scrutiny. There was in this case substantial evidence to sustain the Board's finding that there were here present the customary stigmata attendant upon discriminatory discharges of employees.

In conclusion, we are of the opinion that the Board's findings of fact that Rock Hill Company has violated Section 8(1), (2) and (3) of the Act are supported by substantial evidence, and that the Board's order, in the light of these findings, is valid under the Act and should be enforced as issued.

Affirmed and order enforced.