**NATIONAL LABOR RELATIONS
BOARD v. DANT et al.**

**No. 12985.**

United States Court of Appeals
Ninth Circuit.

Sept. 15, 1953.

George J. Bott, General Counsel, David
P. Findling, Asst. Gen. Counsel, A. Norman
Somers, Asst. Gen. Counsel, Norton
J. Come, Morris A. Solomon, Attorneys,
National Labor Relations Board, Washington,
D. C., for appellant.

Raymond S. Smathurst, Washington,
D. C., J. P. Stirling, Roscoe Watts, John
T. Casey, Portland, Or., for appellee.

Before HEALY, BONE and ORR, Circuit
Judges.

ORR, Circuit Judge.

The National Labor Relations Board,
hereafter the Board, requests enforcement
of its order against certain named

individuals doing business as Dant & Russell, Ltd., respondents. The Board found that Max Gassner and Henry J. Christopherson, employees of respondents, because of their union activities had been discriminatorily discharged in violation of § 8(a)(1) and (3) of the Labor Management Relations Act of 1947, hereafter called the Act, 29 U.S.C.A. § 158(a)(1) and (3).

■ We have for consideration the substantiality of the evidence supporting the Board's order and apply the established rule that the evidence must be looked to as a whole in making our determination. The evidence credited by the trial examiner and relied on by the Board was in substance as follows:

Max Gassner was hired by respondents in December, 1944, and Henry Christopherson was hired in May, 1947, as contract lumber pilers. Their regular job was to stack piles of green lumber purchased by respondents from various saw mills and dumped in respondents' yard. The work is done on a piece work basis by two-man teams. Gassner and Christopherson worked on different teams and only in emergencies did they work together. For periods of four and one-half and two years, respectively, they performed their jobs competently and industriously. That they so functioned until on or about July 18, 1949, the date of their discharge, was admitted by yard foreman Floyd Parker. Parker stated that he never criticized in any respect the individual work of these two employees.

Two months after Gassner started working for respondents he became active in organizing and soliciting membership for the International Woodworkers of America, Local 6–7, hereafter the Union. In June, 1945, the Union was designated as the bargaining representative for respondents' employees and Gassner served on the Union Standing Committee from that date until June, 1948. Likewise, Christopherson became active in union affairs shortly after he entered respondents' employ and served on the Union Standing Committee with only one interruption until the date of his discharge. Both men were outspoken and active in handling grievances and contract negotiations.

Beginning in the summer of 1948, labor relations at respondents' plant were not good. The pilers in particular complained about working conditions and wages. In the fall of 1948 all of the pilers walked off the job in protest over management's failure to decide where lumber should be piled. From November 1 through December 8, 1948, there was a general employee strike. This strike was proposed by Gassner in the presence of Floyd Parker, who later was yard foreman at the time Gassner and Christopherson were discharged.

Numerous statements were made by management representatives expressing a desire to get rid of both men. For example, in July, 1948, plant manager V. V. Redman stated to Gassner and Christopherson that "We would be better off without you around here, if we got rid of you." Manager Percy Cook, on the occasion of the walkout by the pilers, singled out Gassner and Christopherson and said that the Company would be better off without them and that he would fire them if there were another walkout. In the spring of 1949, while Gassner and Christopherson were attempting to adjust a grievance, yard foreman Parker declared that two pilers were going to be without jobs. Again, a day or so before the two men were discharged, Parker told some of the employees that Robert Dant, managing partner of the plant, would give him $25 to get rid of Christopherson and Gassner, and would bet $50 that he, Parker, could not get rid of them.

On July 1, 1949, Gassner and Christopherson went on two weeks vacation during the time when no green lumber was coming into the plant. On July 12 Christopherson went to the plant to get his vacation check and while there asked foreman Parker if he had any work available. Parker informed him that

there was some dry-loading to be done.[1] Christopherson asked Gassner to work with him and the two men reported for work the following morning, Wednesday, July 13. They worked as a team doing dry-loading for the next three days, July 13, 14 and 15. When they reported for work on Monday, July 18, foreman Parker informed them that they were discharged for loafing and failure to perform sufficient work in the previous three day period.

The Board rejected respondents' claim that the men were fired for cause and found that the alleged loafing was a mere pretext and that union activity was the real cause for the discharge. The evidence as a whole supports this finding. The statements made by management expressing a desire to get rid of both men are substantial evidence that Gassner and Christopherson had incurred the animosity of respondents because of the prominent part taken by them in union activities.

■■ Respondents urge that the statements relied upon to show management hostility toward the two men were hearsay. We do not agree. We have examined the evidence specifically referred to by respondents as being hearsay and find that the testimony was given by persons who were actually present and heard the statements testified to. Witnesses testified that foreman Parker told them that Dant would give him $25 to get rid of the men. This evidence was competent to prove that the words were spoken by Parker. It was not intended to prove the truth of the words spoken. N.L.R.B. v. G. W. Thomas Drayage & Rigging Co., Inc., 9 Cir., 206 F.2d 857.

■ Respondents assert that the various statements made by management representatives cannot be used to show employer hostility because Gassner and Christopherson were not identified as the persons of and concerning whom the remarks were made. It is enough if, under the particular circumstances, reasonable men would have understood that the remarks were directed toward the two employees, and that the persons hearing the remarks did in fact so understand. The fact that the remarks were so understood is established.

■■ Respondents' real complaint is that the trial examiner chose to disbelieve the testimony favorable to respondents on disputed matters and drew inferences from the evidence unfavorable to respondent. Determination of the credibility of witnesses is the function of the trial examiner. N.L.R.B. v. West Coast Casket Co., 9 Cir., 205 F.2d 902. The inferences drawn by the trial examiner in this case from credible testimony are not so improbable as to impeach the Board's findings.

■ Moreover, there is substantial evidence in the record to support the finding that Gassner and Christopherson did not loaf on the job but satisfactorily performed their duties as dry-loaders. It is well settled that the inferences drawn by the Board are strengthened by the fact that the explanation of the discharge offered by the respondent fails to stand under scrutiny. N.L.R.B. v. Bird Mach. Co., 1 Cir., 1947, 161 F.2d 589; N.L.R.B. v. Brezner Tanning Co., 1 Cir., 1944, 141 F.2d 62. It is undisputed that on July 13, 14 and 15 Gassner and Christopherson dry-loaded approximately 50,000 feet of lumber during the 20¼ hours in which they worked, averaging about 19,750 feet an eight-hour day. Respondents had no prescribed standard as to the amount of dry lumber a contract piler was expected to handle on a day labor basis. The record contains a wide range of estimates as to what constitutes a reasonable amount of dry-loading for a team of two men working on a day labor basis. The estimates ranged from 30,000 feet to 11,200 feet a day. We think that the Board was justified in finding that the 19,700 feet of

---

1. Dry-loading is done by two-man teams and involves tearing down piles of dried lumber and reloading it onto blocks for transporting to the planing mill.

lumber piled by the two employees was not an unreasonably small output for the period in question.

This seems to be the only instance in the area where a contract piler was discharged because of the manner of performing temporary dry piling. It is significant that foreman Parker not once during the entire three day period criticized the men concerning their work or advised them that they were not piling enough lumber. Both employees had long periods of service with respondents. The fact that they were abruptly discharged without warning is itself sufficient to make the alleged discharge for cause suspect, particularly in view of the established industry practice of first warning an employee and his union before discharging him. N.L.R.B. v. Rock Hill Printing and Finishing Co., 4 Cir., 1942, 131 F.2d 171.

Decree will be entered enforcing the order as prayed.