**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EMPIRE MANUFACTURING CORPORATION, Respondent.**

**No. 7726.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 16, 1958.

Decided Oct. 22, 1958.

Fred S. Landess, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C., on brief), for petitioner.

J. W. Alexander, Jr., Charlotte, N. C., and C. B. Winberry, Statesville, N. C. (Adams, Dearman & Winberry, Statesville, N. C., and Blakeney & Alexander, Charlotte, N. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

In a proceeding before the National Labor Relations Board, Empire Manufacturing Corporation was found to have threatened employees in violation of Section 8(a) (1) (29 U.S.C.A. § 158(a) (1)) of the Labor Management Relations Act

and to have discharged three employees because of union activity in violation of Section 8(a) (3) (29 U.S.C.A. § 158(a) (3)). This petition for enforcement of its order requires that we determine the sufficiency of the evidence, considered upon the record as a whole, to support the Board's order.

■ It is not seriously contended that the evidence of threats, while contradicted by other evidence, is not ample to support the Board's findings of violations of Section 8(a) (1).

■ One of the discharged employees, Harmon, was discharged assertedly for talking to a fellow employee to the extent that the other employee complained to the supervisor of her annoyance and the disruption of her work. Though Harmon denied she was talking about the union at that time, there is every indication that she was, and her discharge slip first read that she had been "discharged for participating in union activities during working hours." Even in the absence of a plant rule of general application, participation in union activities and the solicitation of membership during working hours is not a right protected under Section 7 of the Act. Certainly, after an appropriate warning, which was given in this instance, a discharge of an employee for persistence in the activity would not be in violation of the Act. N.L.R.B. v. Essex Wire Corp., 9 Cir., 245 F.2d 589; N.L.R.B. v. Milwaukee Electric Tool Corp., 7 Cir., 237 F.2d 75; N.L.R.B. v. Clearwater Finishing Co., 4 Cir., 216 F.2d 608; N.L.R.B. v. Edinburg Citrus Ass'n, 5 Cir., 147 F.2d 353.

There is evidence here, however, that on the morning of the day when all of the events occurred which bear upon this discharge, the supervisor had a conversation with this employee during which a number of different threats were made. This occurred prior to Harmon's activities, which were said to have justified the discharge, and the threats themselves indicate that the supervisor was so opposed to the general advocacy of the union as to justify an inference that such advocacy, rather than the particular conduct, was the motivating cause of the discharge. The specific threats made to Harmon that morning before she did anything to occasion a warning or discipline might be considered in connection with similar threats made by the same supervisor to other employees on that same morning. There was evidence that she said to another employee, "I may not fire you for talking union but you had better watch your step and I mean watch your step. I am going to be mean as a snake from now on."

A second employee, Wallace, on the same morning, was also the victim of threats by the same supervisor. That afternoon she was laid off for lack of work. The work she was doing was on seasonal goods, and it is clear that the work was close to running out. Some work remained to be done, however, and it was accomplished by the transfer of another employee after the layoff. Whether this work required the full time each day of the substituted employee does not appear, but the threats in the morning preceding the afternoon in which she was laid off fairly warrant the inference, which the Board drew, that Wallace was selected for the layoff because of her union activity. After her layoff, instructions were issued that she should not be re-employed upon the asserted ground that defects in her work had come to light, but it was still for the Board to draw the inference whether that was the real ground for the new instructions respecting her re-employment, or whether they were a consequence of the threats made to her on the morning of her layoff.

The third employee, Beaver, had been in the hospital, and, upon her return to her home, indicated that she hoped to return to work on a certain day. She had signed a letter addressed to the management as a member of a committee of the Union, which had been received by the Company several days before the date of her prospective return, but, when she did not report at starting time on the day she had hoped, she was called on the tele-

phone from the personnel office, at which time she reported that her baby sitter had left her and that she could not come until her sister arrived to take care of her baby. Later in the morning, her supervisor called to inform her, after some conversation, that she would never be re-employed. The Company contends that the efforts to get her to come back to work foreclose any inference that they were attempting to terminate her employment on account of membership on the Union committee, but a mother recently out of the hospital and deprived of a baby sitter would ordinarily receive more consideration than a summary dismissal when she was unable to state on exactly what date she would be able to return. This is especially true in view of the fact that she had been employed by this company for twelve years. It is quite possible that the precipitousness and finality of the supervisor's dismissal of Beaver on the telephone that morning may have been due to some personal feeling of impatience or exasperation unrelated to the union activities, but the Board might not unreasonably have found that they had their roots in Beaver's union affiliation and the supervisor's determined opposition to union advocacy.

Most of the threats, upon which the charges in this case were based, were made on March 7, 1956, the day following receipt by the Company of a letter informing it that ten of its employees were serving as an organizing committee for the Union. It was on the afternoon of the same day that Harmon was discharged and Wallace was laid off.[1] Beaver was then in the hospital and there was nothing to indicate any union activity on her part until March 16 when the Company received a letter signed by her and two other employees representing themselves to be members of a union committee. Beaver was discharged the following Monday, March 19. Such coincidence of information, threats and

disciplinary action was properly considered by the Board in reaching its findings.

We find adequate support in the record for the order of the Board and it will be enforced.

---

1. Neither had signed the letter of March 5, 1956, but the evidence warrants the conclusion that the supervisor learned on March 7 that they were supporting the union's organizing campaign.