NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Harlan B. BROWNING and Roy J. Rasco, d/b/a Cottage Bakers, Respondents.

No. 6031.

United States Court of Appeals Tenth Circuit.

July 14, 1959.

Earle W. Putnam, Atty., N.L.R.B., Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., with him on the brief), for petitioner.

James C. Ritchie, Albuquerque, N. M. (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., with him on the brief), for respondents.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), the National Labor Relations Board petitions for the enforcement of its order requiring the respondents to cease and desist from certain unfair labor practices and to offer Phillip Harrington full reinstatement to his former employee position and to make him whole for any loss of earnings sustained by

reason of his discharge. The Board adopted the trial examiner's finding that respondents violated Section 8(a)(3) of the Act, 29 U.S.C.A. § 158(a)(3), by discharging Harrington for his union activity. The only question for decision here is whether that finding is supported by substantial evidence.[1]

■ The respondents, Harlan B. Browning and Roy J. Rasco, are partners engaged in the manufacture and retail distribution of bakery products in Albuquerque, New Mexico. The products are sold house to house by truck route salesmen. Phillip Harrington was employed by respondents in March, 1955 as a route salesman. Admittedly he showed excellent sales ability and, of those engaged in like employment, was the best income producer for the partnership. In other respects, Harrington's conduct as an employee left much to be desired, and the record sustains the Board's conclusion that the respondents had valid cause to discharge him for that reason if they desired to do so. The Board found, however, that the discharge was occasioned by Harrington's union activity, rather than by his misconduct. We think also that the record sustains this finding.

The history of Harrington's union activity begins in July, 1956. Sometime during that month, a sales manager overheard part of a conversation between Harrington and another employee concerning the possible advantages of union organization of the route salesmen. A similar incident occurred in November, 1956, at which time Harrington was warned not to talk to the other men about the union. On both occasions the sales manager remarked that continued union agitation would result in the termination of Harrington's employment. In early January, 1957 Harrington made inquiry of an official of the Teamster's Union for information concerning the unionization of respondents' salesmen. He was given some application cards, and from that

time to the date of his discharge, was the leader in recruiting the route salesmen into the Union. With the assistance of other employees, 22 of the respondents' more than 30 route salesmen were signed up. On February 4, 1957, the respondents' sales manager questioned Harrington about the union movement and learned that he had signed an application card and had succeeded in getting a large number of other salesmen to do so. The sales manager criticized the union in strong language and threatened to have nothing more to do with Harrington or any of those who had joined it. He also warned that Browning, the partner in charge of sales, would close the plant rather than deal with the union. The substance of this conversation was given to the respondent Browning, who also had displayed a general anti-union attitude. On February 6, representatives of the Teamster's Union informed Browning that the Union represented a majority of the route salesmen and displayed the signed cards. Browning refused to talk to the representatives or to recognize the Union as the representative of the employees. On February 7, Browning sent for Harrington and discharged him. Browning's testimony indicates that he told Harrington that he was being discharged because of prior misconduct, but Harrington's version of what was said could be construed otherwise.[2]

■■■ Our review is limited to an examination of the entire record to determine whether there is substantial evidence to support the finding that Harrington was discharged because of his union activity. Findings of the Board will not be set aside unless a fair estimate of all the evidence discloses that they are clearly erroneous. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456. See also N.L.R.B. v. Midwestern Instruments, Inc., 10 Cir., 264 F.2d 829, certiorari denied 79 S.Ct. 1451.

■■ There is no substantial conflict in the evidence presented here. The real dispute centers around inferences which the facts suggest. From all the evidence, the Board would have been warranted in inferring that Harrington's union activity either did or did not occasion the respondents' decision to discharge him. Under these circumstances, the Board's conclusion will not be interfered with. As said in the Universal Camera case, supra:

"* * * a court may [not] displace the Board's choice between two

2. As to what was said at the time of discharge, Harrington testified:

"* * * He said, 'Well, you have been causing me too much trouble.' I said, 'Mr. Browning, what do you mean by causing you too much trouble?' and he said, 'Well,' he says, 'you have been slapping the hand that feeds you' and I said, 'What do you mean I have been slapping the hand that feeds you' and he says, 'You know what I am talking about, man, let's not go into details about that. I have another beef, you have been coming in late.' I said, 'What do you mean coming in late?' He said, 'Well, you are always the last man to leave the dock.' I said, 'I'm not always the last man to leave the dock' but he says, 'Irregardless, I'm going to have to let you go, and I'll talk to Howard about it this evening.' I said, 'What have I done, Mr. Browning?' and I says, 'Is there something that happened on my route?' He says, 'No, if I had thirty more men like you, I would have it made. You are the best salesman I have got' and I said, 'Well, is it for union activities?' He says, 'I'm not going into any subject about the union' and he said, we talked, and I asked him, I said, 'Well, haven't I been doing a good job selling your merchandise?' He says, 'Yes, you're doing the best.' I said, 'What do you mean by causing you too much trouble?' He said, 'You know what I mean, I don't have to make any pictures for you.' He says, 'I'll talk to Howard tonight and we'll let you know how much time you can have.' and that evening when I came in, Mr. Howard said, 'Well, boy, Mr. Browning told me to let you go.' That is it."

fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*."

N.L.R.B. v. Midwestern Instruments, Inc., supra.[3] See also N.L.R.B. v. Empire Mfg. Corp., 4 Cir., 260 F.2d 528; N.L.R.B. v. West Point Mfg. Co., 5 Cir., 245 F.2d 783; N.L.R.B. v. Coats & Clark, Inc., 5 Cir., 231 F.2d 567; N.L.R.B. v. Carpet, L. & R. T. Layers, 10 Cir., 213 F.2d 49; N.L.R.B. v. Dant, 9 Cir., 207 F.2d 165.

The respondents contend that the trial examiner's report reveals that his choice between these two conflicting inferences was based on improper reasoning. The examiner thought that the length of time that respondents tolerated Harrington's tardiness indicated that they had adjusted to this shortcoming. Respondents point to the equally long period during which they knew of Harrington's union activity without taking action, and argue that the examiner could just as well have concluded that they condoned this leadership in the union movement. While it is true that the Board might have accepted this latter version of the evidence, the record does not compel such a finding. We are convinced that the Board's conclusion that Harrington's union activity was the real reason for his discharge and was one of several actions taken by respondents to discourage the union organization of the route salesmen finds substantial support in the record. See N.L.R.B. v. WTVJ, Inc., 5 Cir., 268 F.2d 346; N.L.R.B. v. Empire Mfg. Corp., supra; N.L.R.B. v. Midwestern Instruments, Inc., supra; compare N.L.R.B. v. Arthur Winer, Inc, 7 Cir., 194 F.2d 370, certiorari denied 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638.

The Order of the Board will be enforced.

3. A statement of this Court in N.L.R.B. v. Midwestern Instruments, Inc., is applicable here [264 F.2d 830]: "There is substantial conflict in the evidence in this case. There is evidence from which the examiner and the Board could have found that Neuman was discharged for valid reasons and not in violation of the Act, rather than as found by the Board that he was discharged in violation of the Act. Our review is limited to an inquiry whether an examination of the entire record supports the conclusion that the Board's findings are supported by substantial evidence." (Footnote omitted.)