NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NEW ENGLAND UPHOLSTERY CO.,
Inc., Respondent.

No. 5489.

United States Court of Appeals
First Circuit.

July 8, 1959.

Rehearing Denied July 28, 1959.

Russell Specter, Attorney, Glen Cove, N. Y., with whom Jerome D. Fenton, Washington, D. C., General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Washington, D. C., Asst. Gen. Counsel, and Arnold Ordman, Washington, D. C., Attorney, were on brief, for petitioner.

Jerome Medalie, Boston, Mass., with whom Cohn, Riemer & Pollack, Boston, Mass., was on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for enforcement of a decision and order of the National Labor Relations Board which found that the respondent, New England Upholstery Co., Inc. (hereinafter called the Company), had violated Section 8(a) (1) of the Labor Management Relations Act, 1947, 61 Stat. 140, 29 U.S.C.A. § 158, and ordered it to cease and desist from discouraging self organizational activities, by threatening its employees with reprisals, interrogating them concerning their union activities, informing them that their union meetings were under surveillance or by inducing them to forego their freedom of choice of bargaining representation and to select a bargaining representative of the Company's choice, and to post the usual notices.

■ The Company first urges that the trial examiner's admission into the record of a summary report of an investigation made by the Regional Director of the Board was a procedural infirmity of so debilitating a nature as to vitiate the validity of the trial examiner's intermediate report and the Board's decision based thereon. It appears that the hearing before the trial examiner was a consolidated proceeding, one aspect of which was based on unfair labor practices allegedly committed by the Company and the other being based on objections made by the Upholsterers' International Union of North America, AFL-CIO (hereinafter called the Union), to a Board conducted election among the Company's employees, which election resulted in a defeat for the Union. Only the former aspect of the proceeding is before us for review under Section 10 of the Act. The Regional Director's report was a part of the preliminary procedure authorized by the Board with respect to the latter aspect of the proceeding. It seems clear from the record that this report was utilized by the trial examiner only as a means of determining the issues to be decided by him with regard to the representation proceeding and was expressly not part of the record upon which he based his findings either in the unfair labor practice proceeding or in the representation proceeding. The Board also expressly indicated in its decision that both the trial examiner and the Board relied only upon the testimony presented before the trial examiner for their findings in both the unfair labor practice and representation proceedings.

We are not persuaded by respondent's argument that despite these clear statements by the Board the conclusions of the Regional Director necessarily had to be relied upon for the Board to find as

it did because of the absence of other evidence to support those findings. The respondent in support of this theory asserts there was no testimony during the hearing before the trial examiner that the Company attempted to induce an employee named Palmer to form a plant committee in place of the union. However the Board could rationally conclude from Palmer's testimony in the hearing that he, as one who apparently had influence with the other employees, had been asked if it were possible to form a plant committee. The Board could reasonably infer that such a committee would be in place of the union. In view of the improbability of any prejudice to the Company's cause in the unfair labor practice proceeding by the admission into evidence by the trial examiner of the Regional Director's report for a specific limited purpose, we reject the Company's contention on this point. See Western Union Division Commercial Telegraphers' Union, A. F. of L. v. United States, D.C.1949, 87 F.Supp. 324, 333, affirmed 338 U.S. 864, 70 S.Ct. 148, 94 L.Ed. 530.

The Company also contends that there was not substantial evidence in the record as a whole to support the five findings of fact made by the Board upon which it based its conclusion that the Company had violated Section 8(a)(1) of the Act. We find that there was not substantial evidence in the record to support one of these findings—namely, that the remark by a minor supervisory official to one McCaffrey concerning the latter's distribution of membership cards was an illegal threat of discharge for which the Company was responsible. The evidence appears to be uncontroverted that this remark was a warning from one friend to another that if McCaffrey were seen by other management officials distributing cards he could lose his job. Moreover, the Board found that this warning was in reference to McCaffrey's union activities during nonworking hours. The evidence in the record before us, however, indicates that McCaffrey had been distributing these cards during working hours and there is nothing to indicate that the warning took place during nonworking hours or that it related to McCaffrey's activities during nonworking hours. The right to solicit for union membership during working hours is not ordinarily protected under Section 7 of the Act. See National Labor Relations Bd. v. Empire Mfg. Corp., 4 Cir., 1958, 260 F.2d 528, 529; National Labor Relations Bd. v. Essex Wire Corp., 9 Cir., 1957, 245 F.2d 589, 593.

Another of the findings made by the Board concerns a speech made by the Company's president to members of the frame department which was found to be of a coercive nature rather than just a prediction of the future of the business in the event of higher costs. Although he did point out that if costs increased due to recognition and negotiation with the union it would be necessary to shut down the frame department, which in itself is clearly not coercive, the speech closed with an emphatic and clear statement that if the union won the election the frame department would close. The fact that earlier portions of his speech may have been protected by Section 8(c) of the Act does not render his concluding statement any less coercive and this statement constitutes substantial evidence supporting the Board's finding.

The Board relies on certain other Company efforts to convince certain employees of the lack of need for a union as evidence of violations of Section 8(a)(1). The Company contends, however, that this conduct is protected by Section 8(c) of the Act. One example of the Company's attempts at persuasion concerns Nunzio Pappalardo who was called into the president's office and was told that he had been seen attending a union meeting and was asked why he did so. After some discussion of this employee's particular grievances, he was told by the president that because the Company's business was slow, it could survive only without a union and that it was hoped he would so inform the other employees. Under these circumstances, such conduct by a highly placed executive of the Company could be found to be tainted with coercion. See Nation-

al Labor Relations Bd. v. Syracuse Color Press, 2 Cir., 1954, 209 F.2d 596, certiorari denied 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108. On the other hand, the conversation between the Company's president and employee Palmer seems entirely innocuous and protected by Section 8(c) of the Act. Other conversations between Palmer and Camosso and Campiola, two supervisory officials of the Company, also cannot be found to have been coercive in nature. See National Labor Rel. Bd. v. Associated Dry Goods Corp., 2 Cir., 1954, 209 F.2d 593; National Labor Relations Board v. England Bros., 1 Cir., 1953, 201 F.2d 395.

Thus, of the five findings relied upon by the Board to support their conclusion that the Company had committed an 8(a) (1) violation, we have found only two to be supported by substantial evidence. However, these two actions by the Company are in themselves adequate to support the Board's conclusion that the Company had violated Section 8(a) (1) and the issuance of its order restraining any further violations of that section of the Act.

A decree will be entered enforcing the order of the Board.