**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**F. M. REEVES AND SONS, INC., Respondent.**

**No. 6125.**

United States Court of Appeals Tenth Circuit.

Dec. 17, 1959.

Fannie M. Boyls, Atty., N.L.R.B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Arthur C. Katims, Atty., N.L.R.B., Washington, D. C., on the brief), for petitioner.

Scott Toothaker, McAllen, Tex. (Ewers, Toothaker, Ewers, Elick, Jones & Abbott, McAllen, Tex., of counsel), for respondent.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

In this proceeding the National Labor Relations Board seeks enforcement of its order requiring F. M. Reeves and Sons, Inc., herein referred to as "respondent," to bargain with Local Union No. 492 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as the exclusive bargaining representative of its employees in an appropriate unit, to cease and desist from unilaterally offering wage increases or other employee benefits, and also upon unconditional request to return any striking employee to his employment. The order was based on the Board's conclusion that respondent had committed unfair labor practices proscribed by Sections 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (1) and (5).[1]

At the outset, it is necessary to consider respondent's contention that the Board's self-limiting jurisdictional standards made the assertion of jurisdiction improper in this case. To better effectuate the purposes of the Act and to promote the prompt disposition of major cases, the Board has from time to time established these standards in order to reflect its policy of handling only cases having significant impact on interstate commerce. See Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Maytag Aircraft Corp., 110 N.L.R.B. 594. Although the Board had held in Westport Moving and Storage Co., 91 N.L.R.B. 902, that jurisdiction would be asserted over "enterprises which substantially affect the national defense," that principle was restricted in Maytag Aircraft Corp., supra, wherein it was announced that thereafter jurisdiction would be asserted "over enterprises of this type only if they are engaged in providing goods or services directly related to national defense pursuant

1. The Trial Examiner found:

"Respondent is a Texas corporation with its principal office and place of business at Hoban, Texas. In Roswell, New Mexico, it is engaged in the business of mining and supplying sand, gravel, concrete aggregate, and ready-mixed concrete to building contractors. In the 12-month period preceding the issuance of the complaint, the Respondent sold goods and materials valued in excess of $100,000 to certain contractors performing services at Walker Air Force Base, Roswell, New Mexico. All of these sales appear to have been made to subcontractors performing work on the base. About $73,000 was billed to them as a result of materials supplied under formal contract and about $39,000 on purchases arranged less formally. Considering that the Respondent in the period mentioned supplied goods and services having a value in excess of $100,000 to organizations performing work on a National Defense installation, I conclude that the Board's jurisdictional criterion in that respect is satisfied. Although the assertion was made that the period here considered is not a representative one, no substantial evidence to support that position was offered." (Footnotes omitted). With some additions, the Board adopted the Examiner's findings, conclusions and recommendations.

to Government contracts, including subcontracts, in the amount of $100,000 or more a year." The latter standard was in effect when the complained-of practices were committed.[2] The Trial Examiner concluded that this standard was satisfied by respondent's activity which included furnishing approximately $112,000 worth of goods and services during the year preceding the issuance of the complaint to organizations performing work on the Walker Air Force Base. When the activities of the employer have sufficient impact on interstate commerce to invoke the jurisdiction of the Board, it has, in most cases, discretionary authority in deciding the extent to which it will exercise its jurisdictional power. N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S. Ct. 943, 95 L.Ed. 1284; Guss v. Utah Labor Relations Board, supra. But see Office Employees International Union, etc., v. N. L. R. B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846. We find no merit to respondent's contention that sales which constitute the $112,000 amount were not such as to bring respondent within the criteria established by the Maytag case. The evidence is clear that all the material in question was furnished to and was used by contractors for construction required by government contracts in connection with a National defense project at Walker Air Force Base. It is immaterial that some of the material may have been used to construct recreational facilities on the base. The Board was satisfied that the jurisdictional requirements were present, and we agree.

Respondent relies on N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141, in support of its contention that the Board abused its discretion by asserting jurisdiction under conditions which did not meet the Maytag standard. This reliance is misplaced. In the Atkinson case the Board had refused, for many years, to assert jurisdiction over the operations of the employer. The Board then changed its policy and assumed jurisdiction over various unfair labor practices which had occurred before the policy change. The court refused to enforce that part of the Board's order that referred to conduct completed before the later policy was in effect. Here there was no basis for such reliance by the respondent. In a 1955 representation case, jurisdiction was asserted over this same organization, the Board having concluded that the jurisdictional facts almost identical to those in this case satisfied the Maytag standard. It was there said:

"The Employer contends the Board should not assert jurisdiction over its Roswell operation in the light of F. M. Reeves and Sons, Inc., 111 N.L.R.B. 186, wherein the Board dismissed a representation petition because the Employer's operations did not meet its jurisdiction standards. The record now before the Board shows the Employer's Roswell operation sold, under contract, materials valued at about $110,000 to contractors performing work at a military installation, the Walker Air Force Base. * * *"
F. M. Reeves and Sons, Inc., 112 N.L.R.B. 295, footnote 1.

Under the particular facts of this case the Board did not act unfairly or in abuse of its discretion by asserting jurisdiction over respondent. See N. L. R. B. v. W. B. Jones Lumber Co., 9 Cir., 245 F.2d 388; N. L. R. B. v. Parran, 4 Cir., 237 F.2d 373; Optical Workers' Union, etc. v. N. L. R. B., 5 Cir., 229 F. 2d 170, certiorari denied 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484; N. L. R. B. v. Stoller, 9 Cir., 207 F.2d 305, certiorari denied 347 U.S. 919, 74 S.Ct. 517, 98 L. Ed. 1074.

■ With respect to the merits of the petition for enforcement, the only question is whether substantial evidence appears in the record, considered as a whole, to support the conclusion that unfair labor practices were committed. N.

---

2. On October 2, 1958 the Board re-adopted the standard announced in the Westport case. 42 L.R.R.M. 96–97.

L. R. B. v. Hamilton, 10 Cir., 220 F.2d 492; Atlas Life Ins. Co. v. N. L. R. B., 10 Cir., 195 F.2d 136; N. L. R. B. v. Stewart, 5 Cir., 207 F.2d 8. The record discloses that respondent, a Texas corporation, operates a ready mixed concrete, rock, sand and gravel business in Roswell, New Mexico. On August 27, 1957 a meeting was held between management representatives Morris Trent and T. T. Sanders, and labor representatives Faro Caudill of the Teamsters, James Price of the New Mexico Building and Construction Trades Council, and two other men representing the International Union of Operating Engineers, Local 953. Caudill requested respondent's recognition of the Teamsters Local, stating that a majority of respondent's employees had designated that union to be their bargaining representative. Although Caudill had in his possession the signed membership cards, neither Sanders nor Trent inquired as to the exact number of cards or asked to examine them. While there was a conflict in the evidence as to whether the cards were actually physically offered to Sanders and Trent, it is abundantly clear that Caudill proposed that the cards be turned over to a neutral party who could then determine by referring to respondent's payroll whether a majority of the employees had signed cards. This proposal was rejected. During the course of the meeting there was some discussion concerning the fact that several of the employees were temporary and it apparently was agreed that the number of employees in the appropriate bargaining unit would have to be determined without reference to those temporary employees. Because the meeting was held for the purpose of considering the Teamsters' request for recognition, some doubt was expressed by Sanders and Trent as to the reason for the presence of two representatives of the Operating Engineers Union. There was substantial evidence to the effect that the Operating Engineers Union was only interested in advancing the Teamsters' bid for recognition and that it was not a rival union. The evidence convincingly shows that the decision not to recognize or bargain with the Teamsters Union was in a large part made because of the expectancy that the Board would not assert jurisdiction over the dispute rather than because of a doubt as to the majority status of the union. On September 5, 1957, several days after the meeting, eleven of respondent's employees staged a strike protesting their employer's refusal to recognize their representative. On the first day of the strike, Trent informed the employees not participating in the strike that a 25¢ per hour wage increase was to be put into effect immediately and, in addition, promised increased vacation time and the possibility of more regular working hours.

It was stipulated by the parties that twelve employees had signed cards by August 27. In addition, the Trial Examiner found that there were twenty-four employees working for respondent on that date but that only twenty-one of them performed the type of work that would make their inclusion in the bargaining unit appropriate.[3] On these record facts it was concluded that Sections 8(a) (5) and (1) of the National Labor Relations Act were violated both by respondent's refusal to recognize and bargain with the union and by the unilateral grant of employee benefits.

An employer's refusal to bargain is an unfair labor practice when it appears that a union has been designated by a majority of employees in an appropriate unit and that the refusal is without good faith. N. L. R. B. v. Hamilton, supra; N. L. R. B. v. Clearfield Cheese Co., 3 Cir., 213 F.2d 70; N. L. R. B. v. Lunder Shoe Corp., 1 Cir., 211 F.2d 284. There is little room for argument as to the evidentiary support for the first requirement. Concededly twelve employees

3. The test for determining which of the employees were to be included in the unit was established by the Board in 1955.

F. M. Reeves and Sons, Inc., 112 N.L.R.B. 295.

had signed cards. Although the Trial Examiner concluded that one of the card-signers who ordinarily would have been included in the unit was a temporary employee and therefore not to be recognized in determining whether a majority existed, the proper calculation still was eleven union members out of the twenty-employee bargaining unit. But respondent contends that an additional three card-signers were temporary employees. Although these three had initially worked on a temporary project for respondent, they were employed on August 27 in the performance of duties incident to the regular conduct of respondent's business. Substantial evidence shows that the required majority existed at the time when respondent refused to recognize the union.

Neither is there merit to respondent's contention that its refusal to bargain was made in good faith. There is nothing to indicate that either Trent or Sanders entertained a doubt as to the existence of a majority. To the contrary, there is evidence that Sanders expressed the view that he did not doubt the truth of the assertion that a majority of the employees had designated the union. It is also argued that the knowledge that possibly four of the employees were temporary and therefore not to be considered in determining the existence of a majority furnished a basis for a good-faith doubt by respondent's representatives. This suggestion is untenable for the reason that the record fails to disclose that either Trent or Sanders knew that these four employees had signed cards or that a majority would not exist without their inclusion. The respondent also attempts to excuse itself for its failure to recognize the union and bargain with it because there were present at the meeting representatives of another union. It is urged that because of this, respondent's representatives were put in a position of not knowing which of the two unions to deal with. But whatever the relation between the two unions may have been, it is certain that the representatives of the Operating Engineers Union were making no attempt to interfere with the Teamsters' bid for recognition, and that the respondent's representatives must have known from what was said at the meeting that recognition was sought by only one union.[4]

The Board also concluded that the unilateral offering of wage increases and other employee benefits constituted a violation of the same two sections, and part of the Board's order is directed specifically to this phase of respondent's conduct. Of course the granting of the employee benefits appears to have constituted a violation of Section 8(a) (1),

4. In connection with these contentions, the Board concluded:

"We agree with the Trial Examiner that the Respondent violated Sections 8(a) (5) and (1) of the Act. In our opinion, the entire pattern of the Respondent's conduct demonstrates that the Respondent was not motivated by a good faith doubt of the Union's majority representative status in an appropriate unit when it declined to recognize and bargain with the Union and insisted on a Board-conducted election as condition precedent to bargaining with the Union. Thus, while it sought to defend its action on the grounds of lack of majority, we note that it did not question the Union's majority at the time of request, but waited instead to raise the question for the first time at the hearing, and when it did so, it sought to bolster the alleged doubts with such untenable grounds as: (1) the Union may have lacked a majority because 4 card signers were temporary employees; (2) the presence of representatives of the Operating Engineers at the meeting wherein the Union requested recognition raised the possibility that recognition might result in 8(a) (2) charges; and (3) in any event, the Board would not assert jurisdiction over the Respondent. Further, in the interim and shortly after the request to bargain, in total disregard of the majority claim of the Union, the Respondent unilaterally granted a wage increase and other benefits.

"From all this, we conclude that the refusal was merely a delaying tactic to gain time and take action to dissipate the Union's majority and win employee allegiance from the Union. Such conduct has heretofore been held to constitute a refusal to bargain in good faith. We so find here." (Footnotes omitted).

and coming as it did at a time when respondent was refusing to bargain with the union, it also would seem clear that Section 8(a) (5) was thereby violated. But respondent contends that the decision to grant the benefits, or at least the wage increases, was arrived at during the preceding spring when union pressures were not being felt. However, there is adequate support from the record, considered as a whole, for the Board's inference that the announcement on the opening day of the strike that there would be increased benefits violated the two unfair labor practice sections. N. L. R. B. v. Crompton-Highland Mills, Inc., 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Burton-Dixie Corp., 10 Cir., 210 F.2d 199; N. L. R. B. v. Valley Broadcasting Co., 6 Cir., 189 F.2d 582; and see N. L. R. B. v. Browning, 10 Cir., 268 F.2d 938.

The order will be enforced.