NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CENTRAL OKLAHOMA MILK PRO-
DUCERS ASSOCIATION,
Respondent.

No. 6340.

United States Court of Appeals
Tenth Circuit.

Nov. 12, 1960.

Rehearing Denied Dec. 9, 1960.

Herman I. Branse, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost and Melvin Pollack, Washington, D. C., were with him on brief), for petitioner.

Stuart H. Russell, Oklahoma City, Okl., for respondent.

Before MURRAH, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board, requiring the Respondent-Association to cease and desist from discouraging union membership, reinstate and compensate certain workers for back pay, and to notify all its workers of the order. The charge arises out of an alleged violation of the provisions of the Labor-Management Relations Act dealing with discrimination in regard to hire or tenure of employment. 29 U.S.C.A. § 158(a) (3) and (1). Three main questions are presented: (1) whether, as the Board found, the Association can be said to be engaged in activities affecting interstate commerce; (2) whether the Board is barred from asserting its authority by the agricultural-worker exclusion, 29 U.S.C.A. § 203(f) and § 213; and (3) whether the record justifies the Board's order.

In determining whether the Association's activities come within the purview of the Act, as affecting commerce, the primary consideration is whether a work stoppage at the Association would tend to impede the free flow of interstate commerce. N. L. R. B. v. Conover Motor Co., 10 Cir., 192 F.2d 779, and cases cited therein. The respondent is an association comprised entirely of Oklahoma farmers which is, inter alia, engaged in the business of picking up milk, in bulk tank trucks, from farms and delivering it to processors who, while engaged in interstate commerce, sell the milk wholly within the state. Another facet of the Association's activities involves purchasing, for the members, goods which are imported from out of the state. In the year in question, 1958, some $200,000 was expended for such purchases. It is readily apparent that a work stoppage causing cessation of these activities would tend to impede the importation of a considerable quantity of goods from out of the

state, and it is immaterial that the Association does not possess legal title to the imported goods, N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; Santa Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 454, 58 S.Ct. 656, 82 L.Ed. 954; or that it " * * * sells nothing in interstate commerce." Salt River Valley Water Users' Ass'n v. N. L. R. B., 9 Cir., 206 F.2d 325, 327. The crucial factor is that the goods are imported in substantial quantities as an ordinary part of the business activities. N. L. R. B. v. Denver Building & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; N. L. R. B. v. Conover Motor Co., supra. It is thus plain that the business of the Association has a direct effect on the free flow of commerce, even though most of its activities are local in nature.

■ The argument that the agricultural-worker exclusion should apply presents a question closely analogous to Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 768, 69 S.Ct. 1274, 1281, 93 L.Ed. 1672, involving a similar association of farmers collectively joined together for mutual benefit. The court pointed to the " * * * difference between the hiring of mutual servants by a group of employers and the creation by them of a separate business organization, with its own officers, property, and bonded indebtedness, which in turn hires working men. * * The controlling fact is that the company has been set up by the farmers as an independent entity * * *." The respondent argues that this case is distinguishable because here the drivers do certain work on the farms, primarily testing the milk before putting it into the trucks. It is clear, however, that this work is done for the association entity, not for the individual farmers. It is, of course, necessary that precautions be taken to prevent spoiled milk from reaching the trucks. But, the fact that this necessary work must be done on the farm in no way leads to the conclusion that the drivers are not working for the Association—an entity separate and

distinct from the individual members thereof, and thus the agricultural-worker exclusion does not apply.

■■ On the question of the sufficiency of the facts, it is of course the primary function of the Board to find facts, draw inferences, and construe the Act to effectuate its purposes. While we have the "ultimate responsibility for the rationality of the Board's decision," we should not decline to enforce it unless upon the whole record we are convinced the order is not justifiable in law and fact. N. L. R. B. v. International Union of United Brewery, etc., 10 Cir., 272 F.2d 817, 820; N. L. R. B. v. Western Bank & Office Supply Co., 10 Cir., 1960, 283 F.2d 603; 29 U.S.C.A. § 160(e). The alleged violation had its inception on the night of October 23 when the truck drivers reported to the Oklahoma City office and garage preparatory to departing on their assigned routes. Some twelve employees thereupon told the supervisor that they had decided to strike for higher wages and shorter hours. The supervisor answered that he had no authority to act on the demands and, "as far as I am concerned you boys are looking for another job." With this the drivers refused to proceed further and others were assigned to their trucks. The following afternoon, a part of the group appeared at the Association's main office, together with representatives of the Teamsters' Union, and demanded that either the Union be recognized or consent given for an election. The president informed them that "at this point we have no further use for these employees." The workers present were given checks and left the premises. Subsequently some of them were reinstated in their same jobs, but they were required to follow the application procedure prescribed for new employees. It seems fairly inferable from these facts that the drivers were discharged from their employment because they demanded Union representation. The fact that there was no formal discharge is immaterial, the important and necessary proof is that from the whole record,

there is competent evidence to show that the strikers were discharged in violation of the Act. It is sufficient if the words or conduct of the employer " * * * would logically lead an employee to believe his tenure had been terminated * * *." N. L. R. B. v. Cement Masons Local No. 555, 9 Cir., 225 F.2d 168, 172. When all of the facts are considered, the burden is met by the Board, especially when there are no other suggested valid reasons for the discharges.

 It is further urged that certain of the procedural safeguards were abridged by the Trial Examiner. It appears that the respondent was served with an amended complaint less than the prescribed five days prior to the hearing. It is also plain, however, that the Trial Examiner took cognizance of this fact and notified the respondent that it could have a continuance any time the lack of notice inflicted any hardship, and at no time was it requested. There can be no cause for reversal on this ground in the absence of some proof of resulting prejudice. The Association also asserts error for the Trial Examiner's refusal to subpoena the Field Examiner, and for failure to require the General Counsel to furnish copies of witnesses' written statements prior to their testimony. On Board review of the Trial Examiner's recommendations, it was conceded that the Field Examiner should have been subpoenaed on request, but it is also apparent that he could have testified only as to certain evidence which would not have disproved anything which was proven by other witnesses. Thus, even though refusal to issue the subpoena was erroneous, no prejudice resulted to the Association. The same holds true concerning the witnesses' statements. The respondent failed to show in what manner the refusal to offer the statements prior to the witnesses being called materially prejudiced its cause. Moreover, the Board's rules of procedure specify that a respondent is entitled to copies of statements only after the particular witness has testified. 29 U.S.C.A.App. § 102.118,[1] and this rule has been upheld by the courts. Raser Tanning Co. v. N. L. R. B., 6 Cir., 276 F.2d 80; N. L. R. B. v. Chambers Mfg. Co., 5 Cir., 278 F.2d 715.

 Error is also claimed for the Trial Examiner's refusal to reopen the hearing on the grounds that new evidence had been discovered which would tend to show that the checks issued to the strikers were not intended to terminate the employment. However, the Board found, and we agree, that this evidence, taken alone, was not crucial to the Board's findings of unfair labor practices. Its rebuttal could not have disproved the fact that the drivers were discriminatorily discharged.

The order will be enforced.

---

1. Formerly Section 102.95.