**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LIVELY SERVICE COMPANY, Respondent.**

No. 6473.

United States Court of Appeals Tenth Circuit.

April 21, 1961.

206

Margaret M. Farmer, Atty., N. L. R. B., Washington, D. C., for petitioner.

Leonard L. Pickering, Albuquerque, N. M., for respondent.

Before MURRAH, Chief Judge, PICKETT, Circuit Judge, and KERR, District Judge.

KERR, District Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), the National Labor Relations Board petitions this Court for a decree enforcing the order of the Board requiring respondent to cease and desist from certain unfair labor practices and to take certain affirmative action to effectuate the policies of the National Labor Relations Act.

Finding that no prejudicial error was committed by the Trial Examiner, the Board affirmed the Examiner's rulings and adopted his conclusions and recommendations. It was found that the motivating force behind respondent's discharge of the three employees, Blakely, Childress and Muller, was the prevention of unionization of the shop, and that respondent refused to bargain with the union as the representative of a majority of its employees. On April 12, 1960, the Board ordered that respondent cease and desist (1) from discouraging union membership or discriminating against employees due to union activities; (2) from refusing to bargain with the union; and (3) from interfering with, restraining or coercing its employees with respect to union activities. The Board affirmatively ordered respondent to offer to reinstate Blakely to his former or substantially equivalent position, to make Blakely, Childress and Muller whole for any loss of pay suffered as a result of respondent's discrimination against them, and, upon request, to bargain with the union as the exclusive representative of the employees. Respondent was ordered also to make available to the Board certain employment records and to post the usual notice to show compliance with the Board's order, and finally to notify the Board of its compliance with the order. 127 N.L.R.B. No. 41.

We direct our attention first to the finding that respondent discharged three employees to prevent unionization of its shop in violation of Section 8(a), (3) and (1) of the Act, 29 U.S.C.A. § 158(a) (3) (1). The essential question is whether or not the discharge of the three employees was a result of respondent's economic recession and purely coincidental with the unionization of his shop. Respondent contends that the evidence overwhelmingly compels the conclusion that this was an economic layoff. It was an "unfortunate coincidence," he asserts, that the layoff was concurrent with the union activity. The effect of such a coincidence is contingent upon all the facts. It is not prima facie evidence of respondent's innocence.[1]

The record as a whole contradicts the absence of causal connection between the layoffs and the advent of unionization.

---

1. See Miller Electric Manufacturing Co., Inc. v. N. L. R. B., 7 Cir., 265 F.2d 225; Cf. N. L. R. B. v. S. S. Coachman & Sons, Inc., 5 Cir., 203 F.2d 109, 111.

On Friday, December 5, 1958, Blakely and Childress discussed ways to improve working conditions in the shop, and James Jones, a union representative, was called in to talk with them. The next day, December 6, 1958, at a staff meeting respondent discussed the economic conditions of the company. The monthly report for November, 1958, showed an operating loss of over $7,000. This was not the first time the company's books showed a loss nor was it the first time that the discussion of lay-offs or cutting down of plant operations was discussed. Respondent's contentions to the contrary, the evidence permits the conclusion that no positive action was taken at this meeting to lay off three employees and to cut down operations.

On the evening of December 6, 1958, eight of respondent's employees met with James Jones, the union representative. They decided to join the union and signed authorization cards. Blakely was selected as the spokesman of the group. The next evening, a ninth employee signed an authorization card. Sunday afternoon, December 7, 1958, respondent learned about that meeting. Sunday evening respondent's service manager told Blakely that he wanted to talk with all the employees on Monday morning. About 7:30 a. m., Monday morning, December 8, 1958, respondent and his service manager met with all thirteen employees. They discussed the unionization of the group, the economic condition of the company, and the necessity to lay off three employees. Respondent asked that anyone quit who was not satisfied so that those who really wanted to work for the company could save their jobs. There were no volunteers. Respondent said he had no objections to the men joining a union but said he didn't see how it would help them. He stated further, that he didn't want anybody telling him how to run his business or how to pay his men. The inharmonious character of these remarks appears also in respondent's conduct. He asked the employees to decide what they were going to do. They left the room and returned to tell him that they decided to go with the union. Later in the morning Jones met with the respondent. He showed him the authorization cards and the letter demanding union recognition and collective bargaining. After a brief conversation, respondent told the union representative that he didn't know what to do but that he would get in touch with him. Assuming that this response was a denial by respondent to bargain with the union, Jones, that same afternoon, mailed a petition to the board asking for a board election. Blakely, Childress and Muller were discharged at the close of the working day on December 8, 1958. Two days later respondent wrote to Jones demanding a Board election because some of his employees advised him that they had been coerced into signing the authorization cards. Toward the end of February Childress was offered re-employment, which he did not accept. On March 17, 1959, seven employees wrote to the National Labor Relations Board in El Paso, Texas, revoking their authorization of the International Association of Machinists Union to represent them. On March 24, 1959, respondent offered Blakely work as a welder, not as a mechanic. Blakely refused this offer. Muller was offered his former place with the company on March 30, 1959, which he refused, saying that he had another job which satisfied him. Jones withdrew his petition for election on April 6, 1959, and on April 26, 1959, filed the failure to bargain charge.

Though some of the evidence is conflicting and some obscure, the predominating evidence discloses that respondent had other lean months and had not laid off employees nor cut back work; that Blakely had been considered a valuable employee and had been given special schooling and training at company expense in February, March and December, 1958, which evidence resists the criticism that he and his work were unsatisfactory; that Childress and Muller had been retained in other months when work was slow, there always being some work for them to do; that employees were retained

who had been with the company for a shorter period than the employees who were discharged; that no disciplinary or corrective action had ever been taken against Blakely; and that there was no reference to the temporary nature of the lay-off. We are not convinced that the layoffs were economically induced, nor that these three particular employees were laid off because they disrupted the organization the most and were the least valuable to the company.

A critical examination of the entire record leads us to believe that the conclusion of the Examiner and the Board is reasonable. We shall not substitute our judgment for that of the Examiner who heard the testimony and observed the witnesses, nor for that of the Board, which is a specialized body peculiarly equipped to "appraise causes and consequences." [2]

Likewise, we are averse to reject the finding of the Examiner and the Board that respondent violated Section 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (5) and (1), when he refused to bargain collectively with the union. Having heard the men say that they would go along with the union, and having read the letter requesting collective bargaining and advising respondent not to change the employment status of his employees without agreement with the union, respondent forthwith discharged the three employees particularly active in the unionization of the unit and demanded an election. Such dissipation of the union's majority dissolves any dispute over respondent's good faith in doubting the union's representation and in demanding an election.[3]

Furthermore, respondent scuttled his own defense by admitting that he had no reason to doubt nor to confirm that the union represented a majority of his employees, and by not asking for proof of the union's majority status. He did not look at the signed authorization cards and he conceded that the thing that caught his attention was the admonition not to change the employment status or the conditions of employment without written agreement of the union. There is no evidence that respondent in good faith believed that the union did not represent a majority of his employees.[4] Respondent's refusal to bargain was not justified and constitutes the violation as found by the Examiner and Board.

The conclusion is inevitable that the decision of the Board is supported by substantial evidence. It is ordered that the petition of the Board be and the same is hereby granted. The order of the Board will be enforced.

---

2. N. L. R. B. v. Stow Manufacturing Company, 2 Cir., 217 F.2d 900, 905.

3. N. L. R. B. v. Hamilton et al., 10 Cir., 220 F.2d 492.

4. N. L. R. B. v. Armco Drainage and Metal Products, Inc., 6 Cir., 220 F.2d 573, 576-577.