**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEAR BRAND ROOFING, INC., Respondent.**

**No. 6986.**

United States Court of Appeals Tenth Circuit.

Dec. 10, 1962.

Robert Sewell, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost, and Melvin Pollack, Washington, D. C., on brief), for petitioner.

Leonard F. Banowetz, Wichita, Kan. (L. M. Weltmer, Mankato, Kan., on brief), for respondent.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

This is an enforcement petition by the National Labor Relations Board against respondent, Bear Brand Roofing, Inc., who the Board found had violated § 8(a) (1) and (3) of the National Labor Relations Act (29 U.S.C. § 158[a] [1] and [3]), by coercively interrogating its employees about their union activity; by threatening an employee with reprisals, if he attended a union meeting; and, by discharging an employee because of union activities. The Board ordered respondent to cease and desist from these practices, post the usual notices, offer reinstatement to discriminatee, Hodge, and make him whole for any loss of pay suffered by the discrimination. Respondent resists the order on the ground that the underlying findings of fact made by the Board are not supported by substantial evidence.

The evidence as to the alleged discriminatory discharge of employee Hodge, indicates that Hodge had been employed by respondent approximately a year and a half, as an asphalt stillman at respondent's plant. During the latter part of April or May, 1960, Hodge and another employee, Norman Merklein, became interested in unionizing the employees. Upon advice of a former employee, they contacted a representative of the International Union of Operating Engineers, AFL–CIO, and arrangements were made to commence an organizational campaign. Several meetings were held in a small town about eight miles from where respondent's plant was located. Approximately eight to ten employees attended the meetings, including Hodge and Merklein. One such meeting was held on May 24th, three days before Hodge was discharged. At this meeting, union authorization cards were passed out, and several employees signed them and agreed to distribute them to other employees who had not attended the meetings. Hodge testified that other employees at the plant would ask him about the progress of the organizational meetings.

When Hodge reported for work at about 3:00 o'clock P. M. on May 27, 1960, he was told by Novicki, his foreman, that he was being discharged for unsatisfactory work. According to Hodge's testimony, he then told Novicki that the wrong man was being fired, to which Novicki replied, "Who is the right man? If you go up and tell Shank (re-

spondent's plant manager), maybe you can stay on." Hodge replied, "I am no squealer." Novicki, however, testified that when he asked Hodge who the right man was, Hodge merely replied, "You know what I mean," and that he (Novicki) said, "No, I don't. Go speak to Mr. Shank." Apparently Hodge never spoke to Shank. At 5:00 o'clock on the same day, Shank received a telephone call from the National Labor Relations Board's office, informing him that a representation petition for election at Bear Brand Roofing, Inc. had been filed. Respondent contends that this is the first notice it had of any union activity, and Hodge could not, therefore, have been discharged for union reasons. Instead, respondent relies on an incident which occurred on or about May 16, 1960, as the motivating cause for Hodge's discharge. The undisputed evidence shows that on that date, while on the night shift, Hodge permitted the No. 2 still to overheat. When Novicki reported to work, Hodge informed him that the still was overheated and was warned to "Watch it a little closer." Novicki testified that he assumed that Hodge had meant that the temperature had not risen dangerously above the normal point, but upon final checking, found that it had been permitted to rise to a point capable of causing a flash fire or damage to the shingle manufacturing process. Novicki further testified that at various times in the past, he had spoken to Hodge about his unsatisfactory work, and had also discussed the matter with plant manager, Shank.

There is no direct testimony that respondent was aware of Hodge's union activities. The pivotal testimony, which seemed to persuade the Board, arises out of Hodge's visit to Novicki's home on May 29th, two days after his discharge. Hodge testified to the following conversation: "He ask me in and I went in and talked a little bit and I says, 'John, I am not sore at you, I think a lot of you,' and John says, 'I think a lot of you, too. I know you had stool pigeons out there, stool pigeons against me, tried to organ-ize a union behind our back.'" Novicki did not deny the conversation, and the trial examiner credited this testimony and considering it, in connection with all of the relevant facts, concluded that Hodge was not discharged for inefficiency, but because of his union activities.

■ The inference drawing province of the Board, in situations like this, is too well established to justify discussion. Suffice it to say that the uncontroverted testimony was susceptible to the inference that the Board did draw, and on which its order rests. Our inquiry ends there. See: Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Midwestern Instruments, Inc., 10 Cir., 264 F.2d 829; N. L. R. B. v. Browning, 10 Cir., 268 F.2d 938; N. L. R. B. v. Brown-Dunkin Co., Inc., 10 Cir., 287 F.2d 17.

■ Respondent further contends, however, that Hodge's crucial testimony should have been stricken from the record, because of General Counsel's declination to make one of Hodge's pre-trial statements available to respondent, for impeachment purposes. The matter arises in this way. On cross-examination, Hodge was asked whether he had given any statements to the Board. When he replied in the affirmative, respondent's attorney requested that it be made available, pursuant to the Board's rules. A statement by Hodge on June 1, 1960 was thereupon given to respondent's counsel. After the hearing, however, a motion was made to reopen the record, alleging that another statement made by Hodge on August 16, 1960 had not been made available. The Board granted the motion to reopen, limited to cross-examination of Hodge on his August 16th affidavit.

At the re-hearing, respondent objected to the limitation and declined to cross-examine Hodge, insisting that the limitation was unwarranted and erroneous. On appeal, respondent concedes that the failure of General Counsel to produce the

August 16th statement was unintentional, but argues that all of Hodge's testimony should, nevertheless, have been stricken for the violation of the Board's rule, which provides in effect that in a § 10(c) hearing, respondent is entitled on motion, to any written and signed pre-trial statement of a witness called by the General Counsel, and "if the General Counsel declines to furnish the statement, the testimony of the witness shall be striken." See: §§ 102, 118, Rules and Regulations of the N. L. R. B., 24 F.R. 9095.

First, there is no suggestion in the record that the General Counsel declined to furnish Hodge's August 16th statement to respondent. The only question then is whether the respondent was, in any manner, prejudiced by the limitation upon the cross-examination of Hodge. When the case was reopened, counsel was then in possession of both the June and August statements. There is no suggestion that the two statements were in anywise inconsistent or contradictory. There is nothing material in the latter statement that was not brought out on direct examination at the first hearing, on which Hodge was fully cross-examined. There was no prejudice whatsoever. Cf. N. L. R. B. v. Central Oklahoma Milk Producers Ass'n, 10 Cir., 285 F.2d 495, and see N. L. R. B. v. Adhesive Products Corp., 2 Cir., 258 F.2d 403.

■ The § 8(a) (1) violation rests upon the foregoing evidence, and further testimony to the effect that on May 27, 1960, when plant manager, Shank, found out about the representation petition, he called Leland Merklein into his office and asked him if he had heard about the union, and if he was the one who was bringing the union in the plant. At about the same time, or early in June, Shank asked truckdriver, John McGinley, what the truckdrivers thought about the union, and suggested to McGinley that "we should keep our ears open and let him know what was going on." Ex-employee Wyn May testified that on June 2, 1960, while still in respondent's employ, Shank asked him if a union meeting

was to be held that night. According to May, Shank then told him that if there was a meeting and that if he attended, he (May) should be ready to suffer the consequences. The credibility of the witnesses has been attacked by the respondent, but their testimony was credited by the trial examiner and by the Board, and we cannot say that the witnesses were wholly discredited. See N. L. R. B. v. Lively Service Company, 10 Cir., 290 F.2d 205.

The petition will be enforced.