**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SEINE AND LINE FISHERMEN'S UNION OF SAN PEDRO, affiliated with Seafarers' International Union of North America, AFL–CIO, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Paul BIAZEVICH et al., dba M. V. LIBERATOR et al., Respondents.**

**Nos. 19227, 19228.**

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1967.

Rehearing Denied May 9, 1967.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Nancy M. Sherman, Attys, N. L. R. B., Washington, D. C., Ralph E. Kennedy, Director, N. L. R. B., Los Angeles, Cal., for petitioner.

Margolis, McTernan & Branton, Hill, Farrer & Burrill, Carl M. Gould, Stanley E. Tobin, Cecil E. Ricks, Jr., Los Angeles, Cal., Robert Gilbert, Beverly Hills, Cal., for respondent boat owners and individuals.

Gilbert, Nissen & Irvin, Beverly Hills, Cal., for respondent Seine & Line Fishermen's Union of San Pedro.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

These cases are before the court upon separate petitions of the National Labor Relations Board for enforcement of two separate orders, both issued March 2, 1962. This court has jurisdiction under Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), the alleged unfair labor practices having occurred in San Pedro, California, within this judicial circuit.

Respondent boat owners operate fishing vessels out of San Pedro Harbor in

Southern California. In 1955 the fishermen on these boats were represented by Fishermen's Union, Local 33 ILWU. When tuna prices declined markedly in the summer of 1955, the boat owners asked the members of Local 33 to accept wages substantially lower than those to which they were contractually entitled. They refused. As a result, the boat owners, unable to operate at a profit, decided to tie up their boats for the remainder of the year.

Looking ahead to the 1956 season, the boat owners gave Local 33 timely notice of intent to terminate their contract at the end of 1955. In addition, during the last few months of that year the boat owners made it clear to their crew members that continued employment was contingent upon joining Seine and Line Fishermen's Union of Los Angeles Harbor Area, Seafarer's International Union of North America, AFL–CIO, the only other available source of labor in the area. It is noteworthy that Seine and Line members having agreed to accept lower wages, continued fishing throughout 1955.

Late in December, 1955, the boat owners sent certain "clothes letters" to their crew members instructing them to remove their belongings from the boats by December 31. In early January 1956 the boat owners, true to their warnings of the past few months, signed an exclusive collective bargaining agreement with Seine and Line. The union security provision of this contract made membership in the Seine and Line Union an express condition of employment on the boats in question. As a result, most of the Local 33 fishermen refused to fish on these boats in 1956.

On the basis of these facts,[1] the Board, in No. 19,228, made the following conclusions. First, the boat owners, by telling their crew members that they would be replaced unless they joined Seine and Line, interfered with, restrained, and coerced their employees in violation of Section 8(a) (1) of the Labor Management Relations Act, 29 U.S.C. § 158. Second, in accord with a general understanding in the industry, the "clothes letters" constituted discharges of 52 members of the 1955 crew. Because these discharges were motivated by a desire to avoid dealing with Local 33, they were discriminatory within the meaning of Sections 8(a) (3) and 8(a) (1) of the Act. Third, in early January 1956 Seine and Line was not the majority representative of the employees and, at any rate, Local 33 was vigorously maintaining its continuing majority status. Consequently, by entering into and enforcing a union-security contract with Seine and Line at that time the employers discriminated against Local 33 and rendered unlawful assistance and support to Seine and Line, all in violation of sections 8(a) (1), 8(a) (2) and 8(a) (3) of the Act. Fourth, by their participation in the above mentioned contract Seine and Line restrained and coerced employees in violation of sections 8(b) (1) (A) and 8(b) (2) of the Act. Fifth, several of the union security provisions of the Seine and Line contract were unlawful on their face. By incorporating into the contract and by enforcing such provisions, the employers violated sections 8(a) (1), 8(a) (2) and 8(a) (3) of the Act, and Seine and Line violated sections 8(b) (1) (A) and 8(b) (2) of the Act.

In No. 19,227 the Board found that Seine and Line's collective bargaining agreements entered into after September 1956 with the owners of 43 other fishing vessels violated sections 8(b) (1) (A) and 8(b) (2) of the Act by virtue of their inclusion of the identical unlawful union security provisions struck down in No. 19,228.

Respondents attack nearly every one of these findings. They claim that their statements, rather than being coercive, merely reflected the facts of labor life in San Pedro Harbor; that the "clothes letters" were not intended to be discharges but, even if they were, the critical

[1]. For a more comprehensive analysis of the relevant facts see the Board's own opinion in this case. Paul Biazevich, et al., d/b/a M. V. Liberator, 136 N.L.R.B. 13 (1962).

factor of illegal intent was not proven; that Seine and Line did represent a majority of the employees but even if it did not the employers had no reasonable basis for crediting Local 33's claim of majority representation; that the union security provisions of Seine and Line's contracts, although technically deficient, were not illegal per se.

Respondents propounded these same claims to the Board, but each was rejected. The Board, in assessing the facts and the inferences to be drawn from them, made contrary conclusions about the nature and significance of the events in issue.

■ Our scope of review is limited. The question before us, as reviewing court, is not whether the conclusions drawn by the Board are right, but rather whether they are reasonable. See 4 Davis, Administrative Law (Treatise) § 29.06, at 143 (1958). It is not our province to displace the Board's interpretation of conflicting views with our own.

In light of these principles we conclude that the findings of the Board are supported in each case by substantial evidence considering the record as a whole and that, although different inferences might have been drawn from the facts, the Board's construction of the events herein is both reasonable and proper.

But respondents claim that even if there is substantial evidence in the record to support the findings of the Board, we should deny enforcement to the Board's order because the entire proceedings were tained by grave procedural errors.

Perhaps an outline of the procedural events is in order. This hearing was opened August 5, 1957 and closed July 9, 1958. However, for reasons to be discussed below, the hearing was reopened

September 8, 1958 and not ultimately concluded until January 12, 1959.

■ At the original hearing the trial examiner upheld the refusal of the attorney for the general counsel to produce for purposes of impeachment the signed prehearing statements of witnesses who had testified for the general counsel. After the hearing closed, but before the trial examiner issued his intermediate report, the Board in Ra-Rich Mfg. Corp., 121 N. L.R.B. 700 (1958), under the compulsion of N. L. R. B. v. Adhesive Products Corp., 258 F.2d 403 (2d Cir. 1958) recognized that the principle announced in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), regarding the right of counsel in a criminal trial to examine pretrial statements of witnesses called by the government, was applicable to Board proceedings. Consequently, the trial examiner reopened the record and directed the general counsel to supply respondents with all pre-trial statements made by witnesses who had testified in the earlier proceeding.

■ At the reopened hearing, 58 of the 71 witnesses who had testified at the original hearing returned and were cross-examined on the basis of their pretrial statements. About 13 witnesses, whose statements had been handed over to respondents, failed to appear for further cross-examination. The Board, however, adequately protected respondents' rights by striking the testimony of these non-appearing witnesses from the record.[2]

But respondents contend that of the 58 witnesses subjected to cross-examination at the reopened hearing, over 10 testified to the existence of signed statements which were never produced. Since these statements were allegedly given to either the general counsel or to counsel for the charging party, respondents claim that the Board erred in failing to strike the

2. Respondents contend that it was error for the trial examiner to close the hearing before the return date of subpoenas ad testificandum issued to several of those witnesses whose testimony was thus stricken. Respondents have made no claim that they could adduce newly discovered positive evidence through these witnesses.

Since the pretrial statements were intended for impeachment purposes, [Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)], striking the testimony of such witnesses accomplished for respondents the very best result which they could have hoped to achieve.

testimony of such witnesses in accord with Board Rule 102.118.[3]

■■ However, at the reopened hearing the attorneys for the general counsel and for the charging party, in response to questioning by counsel for respondents, repeatedly stated that they had thoroughly searched their records and had been unable to find any statements other than those which they had already handed over.[4] Where statements have been lost or destroyed in good faith the testimony of the witnesses concerned need not be struck. See Killian v. United States, 368 U.S. 231, 239–243, 82 S.Ct. 302, 7 L.Ed. 2d 256 (1961); United States v. Tomaiolo, 317 F.2d 324, 327–328 (2d Cir. 1963), cert. denied, 375 U.S. 856, 84 S.Ct. 119, 11 L.Ed.2d 83 (1963).

■ Next, respondents assert that at the reopened hearing the trial examiner unduly limited the scope of cross-examination of those witnesses who did reappear. It is true that at one point he ordered respondents to limit their examination to establishing merely the fact of an omission from a witness' affidavit of facts later related by the witness at the hearing. This is contrary to the Board's own ruling in Tidelands Marine Service, 126 N.L.R.B. 261 (1960), where it held applicable to Board proceedings the following quotation from Jencks v. United States, 353 U.S. 657, 667, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103 (1956):

"Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony."

If, by such a ruling, respondents were denied the opportunity to subject the general counsel's witnesses to a full, complete and proper cross-examination, it is possible that they suffered prejudice.[5] However, such was not the case. Our independent review of the record [6] fails to show that this ruling was enforced. On the contrary, it appears that, on the whole, the trial examiner was quite liberal in permitting cross-examination.

■ Furthermore, before the Board, respondents did not except to the intermediate report on the ground that the examiner had improperly limited the scope of cross-examination during the re-

---

3. N. L. R. B. Rules and Regulations, as amended, 29 C.F.R. § 102.118 reads, in part relevant here:
 "After a witness called by the general counsel has testified in a hearing upon a complaint under section 10(c) of the act, the respondent may move for the production of any statement of such witness in possession of the general counsel, if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the statement, the testimony of the witness shall be stricken."

4. In view of these circumstances, we find it unnecessary to determine whether the rationale of Harvey Aluminum, Inc. v. N. L. R. B., 335 F.2d 749 (9th Cir. 1964), extends so far as to require the production of statements in the possession not of the United States government but of a private party working in close harmony with the government.

5. Note that in N. L. R. B. v. Bear Brand Roofing, Inc., 312 F.2d 616 (10th Cir. 1962), a limitation of cross-examination to inconsistencies and contradictions was held *not* prejudicial and the petition was enforced.

6. Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e) provides in pertinent part that "in making the foregoing determinations the court shall review the whole record *or such portions thereof as may be cited by any party* * * *." (Emphasis added). Although counsel for respondents cited us to the above mentioned ruling, they did not direct our attention to one specific instance in this voluminous record of over 10,000 pages where the trial examiner used this ruling to curb the scope of proper cross-examination.

opened hearing. Accordingly, in the light of section 10(e) of the Act,[7] "the failure or neglect of the respondent to urge an objection in the Board's proceedings forecloses judicial consideration of the objection in enforcement proceedings." N. L. R. B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 322, 82 S.Ct. 344, 347, 7 L.Ed.2d 312 (1961). See also N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377 (1953); N. L. R. B. v. Noroian, 193 F.2d 172 (9th Cir. 1951).

▇▇▇ The next assignment concerns the general counsel's refusal at the reopened hearing to consent to the giving of testimony by Regional Director Kennedy and Board Attorney O'Brien. Respondents had intended to interrogate them concerning the existence of any and all documents, not already in respondents' possession, which might be useful for purposes of impeachment. Relying solely on Board Rule 102.118,[8] the trial examiner revoked subpoenas duces tecum and ad testificandum properly issued to these employees.

In General Engineering, Inc. v. N. L. R. B., 341 F.2d 367 (9th Cir. 1965), this court ruled that § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), prohibits the Board from excluding evidence which would be otherwise admissible under the general rules of evidence. The mere existence of Rule 102.118, which expressly forbids employees of the Board from complying with subpoenas duces tecum in the absence of written consent of the general counsel, is not enough to create a recognized evidentiary privilege. In the absence of some valid evidentiary objection, Rule 102.118 cannot be invoked to revoke properly issued subpoenas duces tecum. See also N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961). Accordingly, the trial examiner erred in this ruling.

▇▇▇ Respondents further assert that the general counsel had certain statements in his possession to which respondents should have had access. At the reopened hearing, Board Attorney O'Brien advised the trial examiner that he had located three stenographic notebooks, all in the handwriting of deceased Field Examiner Karl W. Filter, containing notes relating to the statements of the government's witnesses. Although O'Brien refused to show these memoranda to either the witnesses or opposing counsel he did

7. Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) provides in part: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

8. NLRB Rules and Regulations, as amended, 29 C.F.R. § 102.118 provides in part relevant here:
 "No regional director, field examiner, trial examiner, attorney, specially designated agent, general counsel, member of the Board, or other officer or employee of the Board shall produce or present any files, documents, reports, memoranda, or records of the Board or testify in behalf of any party to any cause pending in any court or before the Board, or any other board, commission, or other administrative agency of the United States, or of any State, Territory, or the District of Columbia with respect to any information, facts, or other matter coming to his knowledge in his official capacity or with respect to the contents of any files, documents, reports, memoranda, or records of the Board, whether in answer to a subpoena, subpoena duces tecum, or otherwise, without the written consent of the Board or the chairman of the Board if the official or document is subject to the supervision or control of the Board; or the general counsel if the official or document is subject to the supervision or control of the general counsel. Whenever any subpoena ad testificandum or subpoena duces tecum, the purpose of which is to adduce testimony or require the production of records as described hereinabove, shall have been served upon any such persons or other officer or employee of the Board, he will, unless otherwise expressly directed by the Board or the chairman of the Board or the general counsel, as the case may be, move pursuant to the applicable procedure, whether by petition to revoke, motion to quash, or otherwise, to have such subpoena invalidated on the ground that the evidence sought is privileged against disclosure by this rule * * *."

ask for leave to show them to the trial examiner. The trial examiner refused to examine the documents; furthermore, he declined to order the general counsel to supply them to respondents.

The Board held that the trial examiner's ruling was proper, since none of the notes were signed or authenticated by the witnesses. But if the "Filter memoranda" contained substantially verbatim accounts of pretrial statements orally made to a government agent by government witnesses, they should have been produced. Cf. Palermo v. United States, 360 U.S. 343, 345–346, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); Jencks Act, 18 U.S.C. § 3500(e). Any construction of the "signed or otherwise approved or adopted" clause of Board Rule 102.118 which would not require that such statements be turned over would be invalid. Harvey Aluminum, Inc. v. N. L. R. B., 335 F.2d 749, 756 & n. 25 (9th Cir. 1964).

In a case like this where the Board agent's death precluded any clarification on his part, and where the hazy memories of the witnesses at the reopened hearing made it impossible for them to lay the proper foundation of approval of Filter's writings, it was incumbent upon the trial examiner to examine each of the documents and determine whether they met the "substantially verbatim" test. See Williams v. United States, 117 U.S.App. D.C. 206, 328 F.2d 178 (1963). At the very least he should have conducted an in camera inspection of the documents. See General Engineering Inc. v. N. L. R. B., 341 F.2d 367, 376 (9th Cir. 1965). His reliance on the representations of the general counsel and his refusal to examine the documents when urged to do so was error. See United States v. Keig, 320 F.2d 634 (7th Cir. 1963).

In summation, it appears that the trial examiner committed only two procedural errors. First, he should have personally examined the Filter memoranda to see if they were substantially narrative accounts of the witnesses' statements, and

thus produceable on demand. Second, in the absence of a recognized evidentiary objection, he should not have revoked the subpoenas duces tecum issued to the Board employees.

 Nevertheless, we do not consider these errors sufficiently grave to deny enforcement.[9] In accord with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e) a court, on review of an administrative determination, should take due account of the rule of prejudicial error. Procedural irregularities are not per se prejudicial; each case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding. See Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676, 692 (9th Cir. 1949), cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); Kerner v. Celebrezze, 340 F.2d 736 (2d Cir. 1965), cert. denied, 382 U.S. 861, 86 S.Ct. 121, 15 L. Ed.2d 99 (1965); N. L. R. B. v. Ed. Friedrich, Inc., 116 F.2d 888 (5th Cir. 1940). Moreover, "the burden of showing that prejudice has resulted" is on the party claiming injury from the erroneous rulings. Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943); Ahern v. Webb, 268 F.2d 45 (10th Cir. 1959). Respondents here have failed to meet this burden.

 The purpose of both the requested in camera inspection by the trial examiner of the Filter memoranda and the enforcement of the subpoenas duces tecum issued to the Board employees was the same—to ascertain whether there existed any pretrial statements other than those already in respondents' possession which, under the guidelines established by both the courts and the Board, the government was obliged to produce. In other words, these measures were intended merely as threshold inquiries designed to generate the same result as would written interrogatories in pretrial discovery proceedings. But in that an-

9. As respondents themselves admit in their brief, the lapse of almost twelve years since the occurrence of the operative facts militates against remand. The passage of time has rendered a meaningful hearing at this late date virtually impossible.

alogous area an erroneous refusal by a trial judge to order one party to answer interrogatories served upon him by another will not necessarily result in reversal. The moving party must show that he has suffered prejudice thereby. Bell v. Swift & Co., 283 F.2d 407 (5th Cir. 1960).

For respondents in this case to have been prejudiced by the two challenged rulings, it would be necessary first, that the inspection of the Filter memoranda and the enforcement of the subpoenas would have actually unearthed hitherto undisclosed statements; second, that by means of cross-examination based on these statements the testimony of several witnesses would have been successfully impeached; and third, that the Board, in light of this impeached testimony, would have made different findings. Respondents have failed to persuade us that the establishment of the first of these essential prerequisites—the discovery of pretrial statements not already in respondents' possession—is anything more than a remote possibility. Thus we find it unnecessary to indulge in conjecture about whether the second and third of these prerequisites would have followed.

■ Before we would be able to determine whether any of Filter's notes are the type of verbatim accounts which should have been turned over for use in cross-examination, we would need an opportunity to personally examine them. But the Filter memoranda have not been made a part of the record herein. "If petitioners wished review of the trial examiner's determination as to the nature of the report, it was incumbent upon them to see that a record was presented upon which review could be had, by requesting that the memorandum be submitted to the court under seal." Harvey Aluminum, Inc. v. N. L. R. B., 335 F.2d 749, 756 (9th Cir. 1964). See also United States v. Ebeling, 146 F.2d 254, 256–257 (2d Cir. 1944); General Engineering, Inc. v. N. L. R. B., 341 F.2d 367, 376 (9th Cir.

1955); Appeal of United States Sec. & Exch. Comm'n, 226 F.2d 501, 510–511 (6th Cir. 1955). Since this was not done, it is impossible to determine whether the memoranda contained remarks which might have served to impeach any witnesses. "Accordingly, we cannot say that the ruling was prejudicial even if we assume it was erroneous." Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943).

Similarly, respondents have made no showing that any additional statements would have been produced by the subpoenas duces tecum. It is on this ground that the case of General Engineering, Inc. v. N. L. R. B., 341 F.2d 367, 369 (9th Cir. 1965) can be distinguished. There petitioner made a specific offer of proof as to each of the four subpoenaed employees. Id. at 370 & n. 3. In addition, because of inconsistent explanations made by the government's attorneys, there was good reason to believe that some produceable documents might have been withheld.

■ There were no such extenuating circumstances in this case.[10] On the contrary, as mentioned earlier, counsel for the General Counsel had on several occasions made it clear that he had already handed over all the pretrial statements in his possession.

Respondents' final thrust is directed against the Board's orders. They claim that the order of back pay and reinstatement is unwarranted; that the revocation of Seine and Line's certification and the setting aside of its collective bargaining agreements with the boat owners herein is exceedingly harsh; that reimbursement of the discriminatees for all dues, initation fees, assessments and support money illegally exacted from them is unjustifiable.

■ However, under section 10 (c) of the Act the Board is charged with an extremely broad latitude in fashioning remedies to effectuate the purposes of the

10. A refusal to issue a subpoena, although error, is not always prejudicial. See N. L. R. B. v. Central Oklahoma Milk Producers Ass'n, 285 F.2d 495 (10th Cir. 1960).

Act as a whole. N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). Wherever possible the Board's order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Co. v. N. L. R. B., 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). We cannot say that the Board's orders in these cases run afoul of this test.

We have examined respondents' other points on this appeal but find them totally lacking in merit. Accordingly, the Board's orders in No. 19227 and No. 19228 are affirmed and shall be enforced.